Greenview Trading Co., Inc., Respondent, v Hershman & Leicher, P. C., et al., Appellants, et al., Defendants.

First Department, May 28, 1985

### APPEARANCES OF COUNSEL

*Harold M. Hershman* of counsel (*Hershman & Leicher, P. C.,* attorneys), for appellants.

*S. Robert Schrager* of counsel (*Sidney S. Goldstein* with him on the brief; *Kreindler & Relkin, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

Sandler, J. P.

The most important question presented on this appeal is whether the State courts have concurrent jurisdiction with

Federal courts to adjudicate private civil actions for treble damages under the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 USC §§ 1961-1968, in particular § 1964 [c]). We hold that they do not.

The question comes to us on a motion to dismiss a complaint purporting to set forth causes of action for breach of contract, conversion, fraud, prima facie tort, punitive damages and a RICO claim under 18 USC § 1964 (c). The facts alleged in the complaint, which we treat as true on a motion to dismiss under CPLR 3211 (a) (7), arise out of plaintiff's August 30, 1983 contract with defendant Indu Craft, Inc., to assign plaintiff's lease of commercial premises and convey furniture and fixtures located at the premises to Indu Craft for $15,000, of which $500 had been paid as a down payment. Performance was conditioned upon the landlord's execution of a three-year lease with Indu Craft. Indu Craft deposited a certified check representing the balance of $14,500 with its attorneys, defendant Hershman & Leicher, P. C., to be held in an escrow account. The agreement provided that if the landlord executed a lease with a person, firm or corporation other than Indu Craft, the $14,500 held in escrow and the $500 down payment were to be returned to Indu Craft.

The complaint further alleges that three weeks prior to the execution of the agreement the defendants formed a corporation named PLC of New York (PLC) for the purpose of defrauding plaintiff. Defendant Richard Rottman, a principal of Indu Craft, told the landlord that Indu Craft and PLC were the same entity, and that for internal purposes he preferred the lease to be executed by PLC. The landlord complied with this request on August 16, 1983 (two weeks before execution of the agreement between plaintiff and Indu Craft). On September 8, 1983, Indu Craft sent a letter to Hershman & Leicher stating: "We have found out that landlord of the said building 1407 Broadway has signed the lease with another company other than Indu Craft Inc. So please return our money $14500.00 which we had given to you to be put up in the escrow account." The next day, Hershman & Leicher returned the $14,500 to Indu Craft. Pertinently, PLC's certificate of incorporation lists its mailing address as "c/o Indu Craft Inc., 1 East 28th St., 7th Floor, New York, NY 10016", the same address listed on Indu Craft's letterhead.

Although defendant Harold Hershman has submitted an affidavit denying any knowledge on the part of himself or his law firm regarding the formation or existence of PLC prior to the commencement of this action, Special Term did not treat the

motion to dismiss as a motion for summary judgment, and we are therefore bound to treat the allegations contained in the complaint as true, and also to give the plaintiff the benefit of all favorable inferences and implications that may be drawn from the complaint, without expressing any opinion as to the plaintiff's ability ultimately to establish the truth of these averments before the trier of facts. (*Underpinning & Foundation Constructors v Chase Manhattan Bank,* 46 NY2d 459, 462; *219 Broadway Corp. v Alexander's, Inc.,* 46 NY2d 506, 509.) So viewed, we find no issue warranting discussion as to the complaint's sufficiency regarding the causes of action for breach of contract, fraud and conversion. However, the eighth cause of action for prima facie tort must be dismissed because the acts alleged fall clearly within the categories of the traditional torts (*Belsky v Lowenthal,* 62 AD2d 319, 322, *affd* for reasons stated by Justice Evans 47 NY2d 820), and the tenth cause of action for punitive damages must be dismissed as a separate cause of action because punitive damages are merely an element of the total claim for damages on the underlying causes of action. (*APS Food Sys. v Ward Foods,* 70 AD2d 483, 488.)

Turning to the central issue presented on this appeal, which is whether the State courts have concurrent jurisdiction with Federal courts to adjudicate private civil actions for treble damages under 18 USC § 1964 (c), that section provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." In its published opinion addressing this issue (123 Misc 2d 152), Special Term concluded that concurrent jurisdiction exists by applying the presumption that State courts enjoy concurrent jurisdiction over a Federal cause of action, as set forth by the Supreme Court in *Gulf Offshore Co. v Mobil Oil Corp.* (453 US 473, 477-478). While the issue is not free from doubt, we disagree with this aspect of Special Term's determination on the basis of the analysis undertaken in *County of Cook v Midcon Corp.* (574 F Supp 902 [US Dist Ct, ND Ill 1983]). In that opinion, it was noted that 18 USC § 1964 (c) was drawn almost verbatim from Clayton Act § 4 (15 USC § 15), the statute conferring jurisdiction over Federal antitrust laws.[*]

---

[*] 15 USC § 15 stated at the time RICO was enacted: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

After observing that it has long been recognized that 15 USC § 15 gives Federal courts exclusive jurisdiction over Federal antitrust claims, and citing numerous cases to support that principle, the court stated (at p 912): "Moreover, it is well established that the identity in language between 18 U.S.C. § 1964 (c) and 15 U.S.C. § 15 is not a mere happenstance; Congress consciously patterned the RICO section after the antitrust prototype. *See, e.g.,* 115 Cong. Rec. 6992, 6993 (1969) (statement of Sen. Hruska). Legislators must have known that courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. § 1962. *But see Luebke v. Marine National Bank of Neenah,* 567 F. Supp. 1460 (E.D. Wis. 1983) (holding RICO claim could have been raised in state court because of presumption of concurrent jurisdiction, but not addressing whether statute's language and legislative history rebuts the presumption.)" Further buttressing this conclusion is the brief summary of the legislative history of section 1964 (c) in *Bankers Trust Co. v Rhoades* (741 F2d 511, 517 [2d Cir 1984]), wherein the court stated that: "[T]he terms of § 1964 (c) were not discussed at all in the Senate, whose final RICO bill did not contain a provision for a private right of action, and that the discussions in the House of Representatives centered almost entirely on the provision of civil remedies to be enforced by the government rather than by private parties. *See [Sedima, S.P.R.L. v Imrex Co.,* 741 F2d 482], at 490 & n. 24. As *Sedima* notes, the provision for a private treble damage action was added by a subcommittee of the House Judiciary Committee; when the Judiciary Committee reported the amended bill to the House, it did not mention the addition of this right of action. Id. at 489-490. In the House discussion of the bill, there was but one brief remark explaining the substance of the proposed amendment, as Congressman Poff, a member of the Judiciary Committee, noted that 'at the suggestion of the gentleman from Arizona (Mr. Steiger) and also the American Bar Association and others, the committee has provided that private persons injured by reason of a violation of the title may recover treble damages in Federal courts — another example of the antitrust remedy being adapted for use against organized criminality.' 116 Cong. Rec. 35,295 (1970)."

We note that on May 7, 1984 an article was written in the National Law Journal (Flaherty, *Two States Lay Claim to*

*RICO,* p 3, col 1) specifically discussing Special Term's opinion in this case (123 Misc 2d 152, *supra*), and also a Maryland trial court decision *(LaVay Corp. v First Natl. Bank,* Cir Ct, Prince Georges County, No. 83-1020, James Magruder Rea, J.), which reached the same conclusion upon essentially the same grounds. The author of the article interviewed Professor G. Robert Blakey, the chief counsel of the State Subcommittee on Criminal Laws and Procedures when it proposed the RICO Act, whose pertinent comments are reported in the following excerpt from the article *(supra,* p 10, col 2):

"But the principal draftsman of RICO has doubts about the wisdom of allowing state courts to hear cases under the law — although he admits the issue was left unresolved by Congress. 'There is nothing on the face of the statute or in the legislative history' that touches on the question of concurrent jurisdiction, said G. Robert Blakey, a professor at Notre Dame Law School in Notre Dame, Ind. 'To my knowledge, no one even thought of the issue.' * * *

"Nevertheless, 'courts can infer from the statute that if Congress had thought about it, they would have made [jurisdiction] exclusive,' Professor Blakey said. The RICO law draws deeply on the federal antitrust law as a model, he explained, and 'the antitrust law is an exclusive-jurisdiction statute.'

"And many of the predicate offenses needed to incur RICO liability also are based on laws that bestow sole jurisdiction on the federal courts, he said. 'Had anyone brought up the question' of state court jurisdiction, he surmised, 'we would have said no.'"

As the last quoted comment makes clear, there is reason to doubt the correctness of Special Term's conclusion (123 Misc 2d, at p 157) that the issues presented by civil RICO claims are just as appropriately addressed in State courts as in Federal courts. What quickly emerges from a study of the statute is that the adjudication of civil RICO claims involves not just the interpretation of a single Federal statute, however complicated, but rather the interpretation and application of a number of Federal statutes that constitute predicate offenses, statutes with which the Federal courts are obviously far more familiar from ongoing experience than State courts. Indeed, Federal RICO litigation has resulted in significant and pervasive disagreements among the Federal District and Circuit Courts as to the correct interpretation and application of one or another aspect of the statute. State jurisdiction over civil RICO claims would inevitably involve State courts in resolving issues which have divided, and

continue to divide, Federal District and Circuit Courts. (*See, e.g., Sedima, S.P.R.L. v Imrex Co.,* 741 F2d 482 [2d Cir 1984], *cert granted* 473 US __, 105 S Ct 901, *supra; Haroco, Inc. v American Natl. Bank & Trust Co.,* 747 F2d 384 [7th Cir 1984], *cert granted sub nom. American Natl. Bank & Trust Co. v Haroco, Inc.,* 473 US __, 105 S Ct 902; *RICO-Civil Action for Damages,* Ann., 70 ALR Fed 538.)

We are in agreement with Professor Blakey that Congress did not intend to involve State courts so deeply in the interpretation of a host of Federal statutes, and we are persuaded that the better conceptual analysis of the problem points against concurrent jurisdiction for the State courts.

In view of our determination that our State courts have no jurisdiction over plaintiff's ninth cause of action, we need not address defendants' further contention that the complaint does not state a cause of action under section 1964 (c).

The order of Supreme Court, New York County (David B. Saxe, J.), entered March 22, 1984, which denied defendants' motion to dismiss the complaint pursuant to CPLR 3211, should be modified, on the law, without costs, to dismiss the eighth, ninth and tenth causes of action, and as so modified, affirmed.

SULLIVAN, BLOOM and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on March 22, 1984, unanimously modified, on the law, without costs and without disbursements, to dismiss the eighth, ninth and tenth causes of action, and as so modified, affirmed.