**Louis J. LANE, Plaintiff-Appellant,**

v.

**CENTRAL BANK OF ALABAMA, N.A., Defendant-Appellee.**

No. 84–7077.

United States Court of Appeals, Eleventh Circuit.

March 29, 1985.

James M. Gaines, Smith, Gaines, Gaines & Sabatini, Huntsville, Ala., for plaintiff-appellant.

John M. Heacock, Jr., Lanier, Shaver, & Herring, Huntsville, Ala., Jerry W. Powell, Birmingham, Ala., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

■ Louis J. Lane ("Lane") appeals from a decision of the district court awarding summary judgment to appellee Central Bank of Alabama ("Central"). The district court held that state courts have concurrent jurisdiction to hear claims arising under the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972(1). Accordingly, Lane's claim was deemed

barred by *res judicata* since Lane failed to assert the federal claim in a prior state court action involving the same facts relied upon by Lane in the district court. We affirm.

■ The sole issue on appeal is whether the district court correctly held that its jurisdiction under the anti-tying provisions of the Bank Holding Company Act was concurrent with that of the state courts. Our analysis "begins with the presumption that state courts enjoy concurrent jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981). This presumption "can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests." *Id.*[1]

■ *Gulf Offshore* requires that we examine the provision in question for an "explicit statutory directive" mandating exclusive federal jurisdiction. *Gulf Offshore,*

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. At the outset, Lane suggests an alternative method of analyzing the issue. Rather than engaging in a straightforward analysis of the issue under the factors enumerated by the Supreme Court in *Gulf Offshore,* Lane argues that the exclusive jurisdiction of the federal courts would be clearly established if the anti-tying provision could be deemed an antitrust law since it is well-settled that federal courts have exclusive jurisdiction of claims arising under the antitrust laws. *See, e.g., Blumenstock Bros. Ad. Agency v. Curtis Pub. Co.,* 252 U.S. 436, 440, 40 S.Ct. 385, 386, 64 L.Ed. 649 (1920); *Kurek v. Pleasure Driveway & Park District of Peoria,* 583 F.2d 378 (7th Cir.1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). We decline, however, to analyze the issue in such a fashion.

Although Congress did confer exclusive jurisdiction upon the federal courts to hear claims arising under the antitrust laws, *see* 15 U.S.C. § 15, Congress specifically defined "antitrust laws." The Bank Holding Company Act is not included in the definition. *See* 15 U.S.C. § 12.

Moreover, the factors which might lead one to classify the anti-tying provisions of the Bank Holding Company Act as either an antitrust

statute or a banking statute bear little, if any, relation to the factors which must be considered in determining whether jurisdiction is exclusive or concurrent.

> The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.... This rule is premised on the relation between the States and the National Government within our federal system.

*Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981) (citations omitted). Although there may be standards that might provide guidance in classifying a provision as either an antitrust law or a banking law, we feel confident that these standards would not be "premised on the relation between the States and the National Government within our federal system." *Id.*

Finally, the Supreme Court has suggested that the factors enumerated in *Gulf Offshore* are the exclusive means of resolving a controversy concerning the existence of exclusive federal jurisdiction. *See Hathorn v. Lavorn,* 457 U.S. 255, 266, 102 S.Ct. 2421, 2428, 72 L.Ed.2d 824 (1982) ("Only ... [the factors enumerated in *Gulf Offshore* ] will rebut the presumption [of concurrent jurisdiction]").

453 U.S. at 478, 101 S.Ct. at 2875. The jurisdictional section accompanying the Bank Holding Company Act states:

> Any person who is injured in his business or property by reason of anything forbidden in § 1972 of this Title may sue therefore in any district court of the United States in which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee.

12 U.S.C. § 1975. The district court correctly noted that use of the permissive term "may" is entirely consistent with the presumption of concurrent state court jurisdiction. *See Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (Labor Management Relations Act held not to confer exclusive federal jurisdiction); *Greene v. County School Board of Henrico County, Va.*, 524 F.Supp. 43 (E.D.Va.1981) (Title VII of the Civil Rights Act of 1964 held not to confer exclusive federal jurisdiction); *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163 (D.Conn.1979) (Petroleum Marketing Practices Act held not to confer exclusive federal jurisdiction); *Burrell v. Turner Corp. of Oklahoma, Inc.*, 431 F.Supp. 1018 (N.D.Okla.1977) (National Flood Insurance Act of 1968 held not to confer exclusive federal court jurisdiction).

In short, we find no explicit statutory directive evincing a congressional desire to vest exclusive jurisdiction in the federal courts.[2]

 Similarly, our review of the legislative history reveals no "unmistakable implication" that Congress intended to confine jurisdiction to the federal courts. *See* S.Rep. No. 1084, 91st Cong., 2d Sess.; Conf.Rep. No. 1747, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 5519 *et seq.; see also* 116 Cong.Rec. S15707 *et seq.* (daily ed. Sept. 16, 1970). Lane points to a statement in the legislative history by Assistant Attorney General Richard McLaren to the effect that the anti-tying provisions of the Bank Holding Company Act would provide a "valuable supplement" to the antitrust laws. *See* 1970 U.S.Code Cong. & Ad.News 5519, 5559. From this, Lane argues that Congress was well aware that the antitrust laws were within the exclusive jurisdiction of the federal courts, *see Blumenstock Bros. Ad. Agency v. Curtis Pub. Co.*, 252 U.S. 436, 440, 40 S.Ct. 385, 386, 64 L.Ed. 649 (1920), and concludes that the Bank Holding Company Act is also within the exclusive jurisdiction of the federal courts. As noted above,[3] however, Congress specifically defined "antitrust laws," and the anti-tying provisions of the Bank Holding Company Act were not included in that definition. *See* 15 U.S.C. § 12. Given this fact, we conclude that the legislative histo-

---

**2.** In *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 562 F.Supp. 1029, 1042–44 (D.P.R.1983), the court viewed 12 U.S.C. § 1978 as expressing a congressional directive in favor of concurrent jurisdiction. The section provides:

> Nothing contained in this chapter shall be construed as affecting in any manner the right of the United States or any other party to bring an action under any other law of the United States or of any State, including any right which may exist in addition to specific statutory authority, challenging the legality of any act or practice which may be proscribed by this chapter. No regulation or order issued by the Board under this chapter shall in any manner constitute a defense to such action.

12 U.S.C. § 1978. In our view, § 1978 evidences Congress' desire that the Bank Holding Company Act not preempt state legislation in

this area. Although the absence of federal preemption is not necessarily indicative of an intent to confer concurrent jurisdiction upon the states, it does tend to support that result because one would normally expect a litigant to bring all his claims in a single forum. A holding to the contrary would, as a practical matter, frustrate the intent of Congress, since it seems likely that many litigants would forego an adjudication of their federal rights due to the cost and inconvenience of proceeding in a separate forum. Although the availability of pendent jurisdiction in the federal courts lessens this concern, it does not eliminate it. Similarly, a holding of exclusive federal jurisdiction would give litigants who were unsuccessful in state court two "bites at the apple." This we decline to do.

**3.** *See supra* note 1.

ry's reference to the anti-tying provisions as a "supplement" to the antitrust laws is simply insufficient to provide the "unmistakeable implication" needed to rebut the presumption of concurrent jurisdiction.

 Finally, Lane argues that there is a "clear incompatibility between state court jurisdiction and federal interests." *Gulf Offshore, supra,* 453 U.S. at 478, 101 S.Ct. at 2875. To support this argument, Lane notes that he was, in large part, prevented from proving his case in the prior state court action due to the operation of Alabama's "Dead Man's Statute." *See* Ala. Code § 12–21–163 (1975). Because of this statute, Lane argues that it is grossly unfair for a resident of one state to receive a favorable interpretation of federal law from his state court while a resident of another state receives a contrary analysis of the same federal right from his state court. If, however, differing state evidentiary rules were sufficient to provide the "clear incompatibility" necessary for exclusive federal jurisdiction, suits based upon any federal statute would support an argument for exclusive jurisdiction. Although Lane presents a persuasive argument against the Alabama "Dead Man's Statute," that argument should properly be addressed to the Alabama legislature rather than to this court.

 The fact that the anti-tying provisions are narrowly drawn and proscribe specific conduct also suggests that exclusive jurisdiction is not necessary to promote national uniformity in the interpretation of the anti-tying provisions. The same cannot be said of the antitrust laws which broadly prohibit anticompetitive and monopolistic behavior. *See Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 354, 102 S.Ct. 2466, 2478, 73 L.Ed.2d 48 (1982) (broad scope of the Sherman Act required the Supreme Court to provide much of the statute's substantive content); 15 U.S.C. § 1 *et seq.*

Finally, we note that Congress appears to have perceived no incompatibility be-

4. *See supra* note 2.

tween state and federal interests since it allowed the states to enact further legislation in this area.[4]

For the above-stated reasons, the decision of the district court is

AFFIRMED.