**Robert RITCHIE, Susan Ritchie and Paul Fialkin, Plaintiffs,**

v.

**CARVEL CORPORATION, Defendant.**

**No. 87 Civ. 8856(PNL).**

United States District Court,
S.D. New York.

June 20, 1989.

Herzfeld & Rubin, New York City, for plaintiffs (Peter J. Kurshan, of counsel).

Eric B. Kaviar, Jeffrey A. Klatzkow, Yonkers, N.Y., and Herbert F. Roth, New York City, for defendant.

## OPINION AND ORDER

LEVAL, District Judge.

Defendant Carvel Corp. moves to dismiss the complaint for improper venue, contending that this action may be brought only in the Supreme Court of the State of New York, Westchester County. Defendant's motion is granted.

### Background

On June 8, 1984 plaintiffs Robert Ritchie and Susan Ritchie entered into a Carvel Retail Manufacturer's License Agreement under which they were licensed to manufacture and sell Carvel products in a Carvel franchise in Mesa, Arizona. Plaintiff Paul Fialkin entered into a similar agreement with Carvel on October 3, 1984 with respect to a Carvel franchise in Phoenix, Arizona. The Ritchies ceased operating their store and abandoned the premises in October 1985. Shortly thereafter, Carvel terminated their license. Fialkin ceased operating his store in January 1986. Carvel terminated his license.

The complaint was filed in January 1987 in the United States District Court for the District of Arizona. It alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, as well as state law claims of fraud, negligent misrepresentation, breach of contract and breach of fiduciary duty. In February 1987 Carvel moved to dismiss for improper venue, or, in the alternative, to transfer the action to this court. The motion was based on a forum selection clause in the license agreements. Plaintiffs contended that the forum selection clause was void by reason of Carvel's fraudulent inducements.

The Arizona district judge, Robert C. Broomfield, held that the forum selection clause was binding and enforceable and transferred the action to this court pursuant to 28 U.S.C. § 1404(a), "in the interest of justice."

In this court, plaintiffs then filed a second amended complaint which omits RICO allegations. Carvel then made this motion to dismiss based, once again, upon the forum selection clause, which provides that, unless the action is within the exclusive jurisdiction of federal courts, it may be lodged only in the Supreme Court of the State of New York, Westchester County. Plaintiffs cross-move for leave to file a third amended complaint to reallege a RICO claim.

*Discussion*

Defendant contends that under the forum selection clause of the license agreements, unless the action is within the exclusive jurisdiction of the federal courts, the sole venue is the Supreme Court of the State of New York, Westchester County. This contention is borne out by the license agreement between the parties. Paragraph 28 provides:

> As to any legal action that Licensee may bring against Carvel or any officer, director or employee of Carvel either during the term of this Agreement or thereafter where only the federal courts have jurisdiction over the subject matter of such legal action it is agreed and understood that such legal action shall only be brought in the United States District Court for the Southern District of New York and that such court shall be deemed be the court of sole and exclusive venue for the bringing of such action. As to any other legal action that Licensee may bring against Carvel or any officer, director or employee of Carvel, it is understood and agreed that any such action shall only be brought in the Supreme Court of the State of New York, in the County of Westchester and that such Court shall be deemed to be the court of sole and exclusive venue for the bringing such action.

Plaintiffs oppose the motion on three grounds. They contend that: (1) this very motion was denied by Judge Broomfield, and should not be reconsidered by this court; (2) newly discovered evidence shows that the license agreements were procured by fraud, and therefore the forum selection clause should not be enforced; and (3) this motion is moot because plaintiffs have sought, and should be granted, leave to amend the complaint to reallege RICO violations.

**1.** The enforceability of a forum selection clause in such context is a matter of federal law. *See Stewart Organization, Inc. v. Ricoh Corp.,* — U.S. ——, 108 S.Ct. 2239, 2242–43, 101 L.Ed.2d 22 (1988) (procedures with respect to venue are governed by federal law). In any event, New

### 1. Judge Broomfield's Decision

 Plaintiffs argue that Judge Broomfield ruled on the question of proper venue when he transferred the action to this court.

The circumstances have changed in two respects: First, plaintiffs have voluntarily dropped the admittedly unsupported RICO claim and the complaint no longer contains a federal cause of action. (This change is of limited force as plaintiffs are petitioning to amend the complaint again to re-assert RICO claims.) Second, at the time of the Arizona decision, Carvel was taking the position that federal courts have exclusive jurisdiction over plaintiffs' RICO claim because New York appellate courts had ruled that state courts lacked jurisdiction over RICO claims. *See, e.g., Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (1st Dep't 1985). Since that time, however, the New York Court of Appeals in *Simpson Electric Corp. v. Leucadia, Inc.,* 72 N.Y.2d 450, 534 N.Y.S.2d 152, 530 N.E.2d 860 (1988), held that New York's courts have concurrent jurisdiction of RICO claims. The motion is, therefore, not, as plaintiffs claim, identical to that filed in the District Court in Arizona. The controlling factors have changed.

### 2. Evidence of Fraud

 Plaintiffs also argue that the forum selection clause should not be enforced because the license agreements were procured by fraud. Under federal law,[1] contract forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985).[2] Enforcement is unreasonable

York law yields the same result as federal law. *See, e.g., Alwinseal, Inc. v. Travelers Indemnity Co.,* 61 A.D.2d 803, 402 N.Y.S.2d 33 (2d Dep't 1978) (forum selection are enforceable).

**2.** Although *The Bremen* dealt with an international forum selection clause in an admiralty

where the opposing party establishes fraud, undue influence, or overreaching bargaining power with respect to the forum selection clause. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12–13, 92 S.Ct. at 1914–15; *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 721–22 (2d Cir.1982); *Karl Koch Erecting Co. v. New York Convention Center Development Corp.*, 656 F.Supp. 464, 467 (S.D.N.Y.1987), *aff'd,* 838 F.2d 656 (2d Cir.1988).

A forum selection clause is to be enforced, except where the *clause itself* is procured by fraud. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974).[3] Plaintiffs do not allege that Carvel made any representations concerning the forum selection clause itself.

■■■■ Plaintiffs made this same argument before Judge Broomfield, who found that plaintiffs failed to establish any basis for relief from the forum selection clause, including fraud. Plaintiffs freely entered into the license agreements, with awareness of the forum selection clause. In fact, they were represented by counsel. They may not now reargue the issue. The new evidence plaintiffs claim to have discovered in support of their allegations of fraud is insubstantial.

### 3. Motion to Amend the Complaint

Plaintiffs contend that their cross-motion for leave to amend the complaint to add a RICO claim moots the present motion, because after such amendment this court will once again be the proper forum under the forum selection clause. This argument fails because amendment of the complaint will not give this court exclusive jurisdiction over the action.

action, "its reasoning applies with much force to federal courts sitting in diversity.... Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue, as Congress has directed by § 1404(a), should be exercised so that a valid forum selection clause is given controlling weight in all but the most exceptional cases." *Stewart Organization, Inc. v. Ricoh Corp.*, 108 S.Ct. at 2250 (Kennedy, J., concurring).

Neither the United States Supreme Court nor the Court of Appeals for the Second Circuit has addressed the issue whether federal courts have exclusive jurisdiction over civil RICO claims. Although some federal courts have disagreed, the majority hold that federal jurisdiction over RICO claims is not exclusive. The Courts of Appeals for the Ninth and Fourth Circuits and several district courts have held that state courts have concurrent jurisdiction over civil suits under RICO. *Brandenburg v. Seidel*, 859 F.2d 1179, 1195 (4th Cir.1988); *Lou v. Belzberg*, 834 F.2d 730, 737 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); *Jae–Soo Yang Kim v. Pereira Enterprises, Inc.*, 694 F.Supp. 200, 202 (E.D.La.1988); *Village Improvement Association v. Dow Chemical Co.*, 655 F.Supp. 311, 313 (E.D. Pa.1987); *Karel v. Kroner*, 635 F.Supp. 725, 731 (N.D.Ill.1986); *Luebke v. Marine National Bank*, 567 F.Supp. 1460, 1462 (E.D.Wisc.1983). The Court of Appeals for the Seventh Circuit has "expressed doubt that federal courts have exclusive jurisdiction over RICO claims." *Crotty v. Chicago Heights*, 857 F.2d 1170, 1172 n. 6 (7th Cir.1988) (citing *County of Cook v. Midcon Corp.*, 773 F.2d 892, 905 n. 4 (7th Cir. 1985)). The Court of Appeals for the Fifth Circuit has similarly implied that it would hold in favor of concurrent jurisdiction. *See Dubroff v. Dubroff,* 833 F.2d 557, 562 (5th Cir.1987).

On the other hand, the Court of Appeals for the Sixth Circuit and several district courts have held that federal courts have exclusive jurisdiction over civil RICO claims. *Morda v. Klein*, 865 F.2d 782, 784 (6th Cir.1989); *Chivas Products Ltd. v. Owen*, 864 F.2d 1280, 1281 (6th Cir.1988); *Hampton v. Long*, 686 F.Supp. 1202, 1206

**3.** Plaintiffs' reliance on *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963 (2d Cir.1988), is misplaced. In *Red Bull*, the court held that a forum selection clause should not be enforced where enforcement would contravene strong public policy. Here, there is *no* public policy interest contravening the enforcement of the terms agreed by the parties as to where litigation will be heard.

(E.D.Tex.1988) ("This court will not foist RICO ... on unwilling Texas courts."); *Spence v. Flynt*, 647 F.Supp. 1266, 1270 (D.Wyo.1986); *Massey v. Oklahoma City*, 643 F.Supp. 81, 84 (W.D.Okl.1986).

State courts are presumed to have concurrent jurisdiction with federal courts over claims arising under federal laws. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981). "This presumption in civil cases arises both out of federal recognition of the states' independent sovereignty and from the states' duty under the Supremacy Clause to recognize federal law as paramount." *Chivas Products Ltd. v. Owen*, 864 F.2d at 1282. The presumption may be rebutted "[a] by an explicit statutory directive, [b] by unmistakable implication from legislative history, or [c] by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. at 478, 101 S.Ct. at 2875. Applying this standard, I conclude that state courts have concurrent jurisdiction over civil RICO claims.

### a. *Statutory Directive*

First, RICO does not expressly provide for exclusive federal jurisdiction. Section 1964(c) of the statute provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." 18 U.S.C. § 1964(c). It does not state that

---

**4.** Explicit language creating exclusive federal jurisdiction is illustrated in many federal statutes. *See, e.g.,* Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("the district courts ... shall have exclusive jurisdiction of civil actions"); Patent and Copyright Act, 28 U.S.C. § 1338(a) ("[s]uch jurisdiction shall be exclusive of the courts of the states"); Admiralty Jurisdiction, 28 U.S.C. § 1333 ("[t]he district courts shall have original jurisdiction, exclusive of the courts of the States").

**5.** In an interview given 14 years after the passage of the statute, G. Robert Blakey, a consultant who had a major role in the drafting of the statute, apparently stated that "no one even thought of the issue" of concurrent jurisdiction. Courts which have found exclusive jurisdiction

---

federal courts will have exclusive authority to hear such suits. "It is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. at 479, 101 S.Ct. at 2875; *see Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962).[4]

### b. *Legislative History*

Nor does RICO's legislative history reveal any intent so to restrict jurisdiction. There is no reference to the question of jurisdiction in any of the committee reports, floor debates or sponsors' memoranda.[5] Rather, "the evidence establishes that [Congress'] attention was focused solely on whether to provide a private right of action." *Lou v. Belzberg*, 834 F.2d at 736 (citing *Cianci v. Superior Court*, 40 Cal.3d 903, 912, 221 Cal.Rptr. 575, 579, 710 P.2d 375, 379 (1985)).

The Court of Appeals for the Sixth Circuit, has inferred congressional intent to grant federal courts exclusive jurisdiction from RICO's similarity to Section 4 of the Clayton Act, 15 U.S.C. § 15. *Chivas Products Ltd. v. Owen*, 864 F.2d at 1283–84; *accord County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 912 (N.D.Ill.1983), *aff'd on other grounds*, 773 F.2d 892 (7th Cir.1985). It reasons that because the private right of action under the federal antitrust laws has been consistently interpreted as exclusively within the federal courts' jurisdiction,[6] and

attached weight to Professor Blakey's further quoted comment that, "Had anyone brought up the question of state court jurisdiction we would have said no." Flaherty, Two States Lay Claim to RICO—Interview with Robert Blakey, Nat'l L.J., May 7, 1984, at 10, col. 4; *see Lou v. Belzberg*, 834 F.2d at 736 n. 4. To find an intent of Congress at odds with its utterance, based on a long subsequent speculation of a Congressional consultant, seems to be pushing the construction of legislative history far indeed.

**6.** The United States Supreme Court has held that the Clayton Act confers exclusive federal jurisdiction. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379–80, 386, 105 S.Ct. 1327, 1331–32, 1335, 84 L.Ed.2d 274 (1985).

the language of RICO is modeled on that of the Clayton Act, Congress must have intended the same limitations for RICO as for the Clayton Act.

The three other courts of appeals to consider the argument have rejected this reasoning. *See Brandenburg v. Seidel,* 859 F.2d at 1193 (the modeling of Section 1964(c) on Section 4 of the Clayton Act does not give rise to an " 'unmistakable implication' of congressional intent to confer exclusive jurisdiction"); *Lou v. Belzberg,* 834 F.2d at 737 ("mere borrowing of statutory language does not imply that Congress also intended to incorporate all the baggage that may be attached to the borrowed language"); *County of Cook v. Midcon Corp.,* 773 F.2d at 905 n. 4 ("We doubt whether the analogy to antitrust law is sufficiently strong to conclude that because jurisdiction over antitrust cases is exclusively federal, RICO jurisdiction necessarily must follow suit."). I reject it as well.

The similarity between the language of Section 1964(c) and Section 4 of the Clayton Act is not a sufficient basis to support the inference of an unstated congressional intent to restrict civil RICO suits to the federal courts. I note furthermore that the jurisdictional language in RICO and the Clayton Act is not significantly different from the jurisdictional language of other statutes, such as Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), which do not confer exclusive jurisdiction in the federal courts. *See Charles Dowd Box Co. v. Courtney,* 368 U.S. at 506, 82 S.Ct. at 522; *see also Lane v. Central Bank,* 756 F.2d 814, 817–18 (11th Cir.1985) (private right of action to enforce the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1975, using virtually identical language to that of Section 1964(c) and described as a "valuable supplement" to the antitrust laws, held to confer concurrent jurisdiction).

Although Congress patterned Section 1964(c) on Section 4 of the Clayton Act, there is no indication that Congress intended that implicit requirements of antitrust

actions be impressed on civil RICO actions. Courts have consistently rejected the view that "RICO should be viewed as an extension of antitrust law in all respects." *Bennett v. Berg,* 685 F.2d 1053, 1059 (8th Cir. 1982) (Clayton Act requirement of "competitive injury" should not be extended to RICO), *aff'd,* 710 F.2d 1361 (en banc), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Schacht v. Brown,* 711 F.2d 1343, 1357–58 (7th Cir.) (notion that objectives of RICO and antitrust laws are identical is not supported by legislative history), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983).

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the United States Supreme Court rejected the argument that Section 4's mandate that claimants prove "antitrust injury" in order to obtain damages under the Clayton Act requires that claimants must show independent "racketeering injury" to obtain relief under RICO. *Id.* at 498–99, 105 S.Ct. at 3285–86. This holding was based, in part, on the fact that Congress did not intend RICO to be identical to the Clayton Act, but mandated that RICO be construed more liberally in order to effectuate its remedial purposes. *Id.* at 499–500, 105 S.Ct. at 3286–87.

RICO's remedial purposes would be hindered if plaintiffs, who might for a variety of reasons prefer a state forum, were barred from state courts. The requirement that Section 1964 be broadly construed, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. at 492 n. 10, 105 S.Ct. at 3282 n. 10, "strongly counsels us not to read the obstacle of exclusive jurisdiction into section 1964(c) on the sole basis of its similarity to section 4 of the Clayton Act." *Lou v. Belzberg,* 834 F.2d at 737 (quoting *Cianci v. Superior Court,* 40 Cal.3d at 913, 221 Cal.Rptr. at 579, 710 P.2d at 379); *see HMK Corp. v. Walsey,* 637 F.Supp. 710, 717 (E.D.Va.1986) (because "RICO differs greatly from federal antitrust, the need for exclusive federal jurisdiction under the antitrust statutes cannot justify a similar result under RICO"), *aff'd on other grounds,* 828 F.2d 1071 (4th Cir.1987).

I conclude that RICO's legislative history does not create the implication that exclusive jurisdiction was intended, thereby justifying deviation from the presumption of concurrent jurisdiction.

### c. *Federal Interest in Exclusive Jurisdiction*

Finally, I consider whether federal interests in RICO are incompatible with state court jurisdiction. This determination is aided by consideration of "the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. at 483–84, 101 S.Ct. at 2878.

While uniform interpretation of any statute is desirable, differences in interpretations of RICO would neither confuse efforts to conform conduct to law nor threaten disappointment of legitimate expectations, as might result from varying interpretations of the antitrust laws. As to the antitrust laws, which involve the prohibition against certain modes of conducting otherwise lawful businesses, there might be considerable confusion and harm to the legitimate business world if the prohibitory scheme were interpreted in different ways by different court systems. Such danger justifies the exclusive federal jurisdiction. RICO is fundamentally different. RICO does not criminalize otherwise lawful conduct. It merely attaches new consequences to traditionally criminal conduct. Thus, there is little danger that legitimate business interests would be harmed by confusion resulting from conflicting interpretations. There is really no interest that would be served by restricting the enforcement of its provisions to the federal courts. The harm resulting from some inconsistency of results as between different courts is not sufficient to rebut the presumption of concurrent jurisdiction or to overcome the desirability of making this statute enforceable in all jurisdictions. *Cf. Nordlicht v.*

*New York Telephone Co.*, 799 F.2d 859, 864–65 (2d Cir.1986) (deciding that jurisdiction over federal claim involving Communications Act of 1934 was concurrent despite the international character of the claims in question), *cert. denied*, 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987).

It has been argued that the exclusively federal nature (expertise of the judges and jurisdiction of the courts) of the majority of predicate acts alleged in civil RICO cases precludes concurrent jurisdiction. *See, e.g., Chivas Products Ltd. v. Owen*, 864 F.2d at 1285. RICO, however, incorporates both state and federal crimes, as predicate acts. 18 U.S.C. § 1961 (both federal and state criminal laws serve as RICO "predicate acts"); *see HMK Corp. v. Walsey*, 637 F.Supp. at 717; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. at 499, 105 S.Ct. at 3286 (RICO "has become a tool for everyday fraud cases"); *United States v. Turkette*, 452 U.S. 576, 586–87, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981) (criminal RICO moves "large substantive areas formerly totally within the police power of the State into the Federal realm"); *Chivas Products Ltd. v. Owen*, 864 F.2d at 1289 (Krupansky, J., concurring) ("a majority of all RICO cases involve claims similar in nature to state law fraud, theft, or contract claims and, accordingly, there is no meaningful support for the [ ] position that state courts should be considered incompetent to judge such charges").[7]

The Sixth Circuit also stated that "the procedural apparatus created by §§ 1965–68 seems inconsistent with concurrent state court adjudication of § 1964(c) claims." *Chivas Products Ltd. v. Owen*, 864 F.2d at 1285. It is true there are procedural provisions of the RICO statute which envision a federal court proceeding. However, these are created for criminal or civil suits prosecuted by the United States Government. *See, e.g.*, 18 U.S.C. §§ 1963(d)(3), 1965(c). Naturally these are heard in federal court. It does not follow that all civil actions

---

**7.** The Supreme Court recently rejected an argument that RICO claims are "too complex to be subject to arbitration." *Shearson American/Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 2344, 96 L.Ed.2d 185 (1987). The Court decided that there is no conflict between arbitration and RICO's purposes. *Id.*

brought under Section 1964(c) must be brought in federal court. *See Lou v. Belzberg,* 834 F.2d at 738 (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. at 489, 105 S.Ct. at 3281, for the proposition that under RICO, "private and governmental actions are entirely distinct").

With respect to the hospitality of state courts to RICO claims, several states have held that their courts have concurrent jurisdiction over civil RICO claims. *See, e.g., Rice v. Janovich,* 109 Wash.2d 48, 742 P.2d 1230 (1987); *Cianci v. Superior Court,* 40 Cal.3d 903, 221 Cal.Rptr. 575, 710 P.2d 375 (1985); *but see Maplewood Bank & Trust Co. v. Acorn, Inc.,* 207 N.J.Super. 590, 504 A.2d 819 (1985) (state courts do not have concurrent jurisdiction); *Levinson v. American Accident Reinsurance Group,* 503 A.2d 632 (Del.Ch.1985) (same). As noted previously, the New York Court of Appeals recently held that it has concurrent jurisdiction over RICO claims. *Simpson Electric Corp. v. Leucadia, Inc.,* 72 N.Y.2d 450, 534 N.Y.S.2d 152, 530 N.E.2d 860 (1988). In any event, the question whether a state court may entertain a RICO suit is a question of federal law, not of state law.

I conclude that the presumption of concurrent jurisdiction is not rebutted by any of the factors articulated in *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870. I am convinced that the purposes of Section 1964 are best served by concurrent jurisdiction. Accordingly, plaintiffs' filing of a third amended complaint would not moot this motion.

### Conclusion

In accordance with the forum selection clause of the license agreements, this action may be brought only in the Supreme Court of the State of New York, Westchester County. Defendant's motion to dismiss the action is granted.

SO ORDERED.